**Connie DUNEGAN, Plaintiff,**

v.

**CITY OF COUNCIL GROVE, KS., et al., Defendants.**

**No. 97–4039–RDR.**

United States District Court, D. Kansas, Topeka Division.

Nov. 5, 1999.

---

Cheryl D. Myers, Michael B. Myers, Myers & Myers, Topeka, KS, for plaintiff.

James S. Pigg, Fisher, Patterson, Sayler & Smith, Topeka, KS, Alan L. Rupe, Husch & Eppenberger, Wichita, KS, for defendants.

### *MEMORANDUM AND ORDER*

ROGERS, District Judge.

This matter is presently before the court upon plaintiff's motion for determination of admissibility pursuant to Fed.R.Evid. 412. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

This is essentially a sexual harassment case. Plaintiff has asserted a plethora of claims, but all of the claims arise out of her allegations that she was sexually harassed while she was employed by the City of Council Grove in their water department. The instant motion was filed by the plaintiff after

the defendants filed motions for summary judgment. In order to understand the motion, the court must set forth the context in which in it arose.

Plaintiff initially filed her complaint on February 19, 1997. She filed an amended complaint on October 7, 1997. In the amended complaint, she asserted a variety of claims. Initially, she alleged the following:

> During the course of plaintiff's employment and as a result of her sex, female, plaintiff was subjected to unwelcomed sexual contacts and remarks, sexual assault and battery, verbal and physical threats, harassing, hostile, humiliating and retaliatory actions and abusive language.

The complaint proceeds to provide details concerning two incidents that occurred on or about September 4, 1995 and on or about June 10, 1996. With regard to the first incident, plaintiff alleges that she was subjected to a "sexual assault and battery" by her supervisor, Jim Masters, while they were working at the water department. Concerning the second incident, she asserts that Richard Swisher, a new water department employee, subjected her to "unwelcome sexual harassment/sexual assault and battery" while they were installing water meters.

On March 2, 1998, defendant Masters filed a motion for summary judgment. In the motion, Masters provided a lengthy statement of uncontroverted facts. The statements pertinent to the instant motion were as follows:

> 5. Plaintiff admits that she voluntarily participated in and welcomed sexual joking, language, and horseplay during her employment with the City of Council Grove including flirting with other city employees, hanging a Playgirl poster or calendar at work, sunbathing on the roof of the Water Department in the nude while on duty, telling jokes at work with sexual connotations, talking about her sex life at work including how horny she was and how long it had been since she had sex, pinching male employees on their buttocks, having sex at the water plant with a co-employee while he was on duty, feigning fellatio with a candy bar in front of other city employees and the Schwan's delivery

man, and crocheting a cover for a male co-worker's penis after he talked about having a tick on his penis.

6. With regard to the nude sunbathing incident, plaintiff told Danny Matthews that she had sunbathed on the roof at the water plant while she was working and that she had to hurry up and get dressed because Mike [a co-worker] came walking in one day.

7. Plaintiff frequently pinched male co-workers on their buttocks. Plaintiff indicated to Dr. Moeller, a psychologist who completed an independent medical examination of plaintiff, that butt pinching was one of her bad habits.

8. Plaintiff discussed her sex life at work including how horny she was, how long it had been since she had sex, and that she had sex with someone in the fire truck at the water plant and on Jim Masters' desk.

9. Plaintiff admitted to having sex at the water plant with a co-worker while he was on duty.

10. Plaintiff admitted to physical contact with other male employees including buttock pinching and an incident involving Danny Matthews where she went up behind him and touched his head and ears trying to tickle him.

11. Plaintiff further admitted that she ate a candy bar at work in front of at least one co-employee and the Schwan's delivery man in a manner that could be reasonably interpreted as a sexual act.

12. Plaintiff also discussed sexually explicit videotapes with Danny Matthews, a co-employee, and told Mr. Matthews that she gave a copy of the videotape to Mr. Masters.

13. Finally, after co-employee Harvey Hawkinson got a tick on the end of his penis and told a story about it at work, plaintiff crocheted a cover for Mr. Hawkinson's penis and gave it to Mr. Hawkinson at work.

.    .    .    .    .

21. Plaintiff could not positively rule out whether she ever behaved in ways that might have encouraged Mr. Masters or suggested she would be open to his advances.

22. Masters did not believe that his conduct would be unwelcome due to previous actions by plaintiff and a previous sexual encounter initiated by plaintiff at work.

On March 11, 1998, defendant City filed its motion for summary judgment. Its statement of controverted facts also contained some matters that plaintiff found objectionable. These statements were as follows:

3. Plaintiff had participated in sexual joking, language and horseplay occurring in the City's water department and, in fact, enjoyed the friendship and camaraderie with co-employees that she perceives was promoted by this conduct.

.    .    .    .    .

60. Plaintiff told Swisher that Masters had sexually assaulted her.

All of the aforementioned material was revealed during discovery. Plaintiff made no efforts during discovery to seek a protective order concerning any of the aforementioned conduct and activities. Plaintiff's counsel actually elicited information on many of these matters during discovery.

Plaintiff, after seeking several extensions in which to file responses to the motions for summary judgment, filed a motion for sanctions. In this motion, plaintiff sought sanctions under Fed.R.Civ.P. 11, contending that the defendants had failed to follow the procedures outlined in Fed.R.Evid. 412(c). Plaintiff asserted that the defendants had set forth facts in their motions for summary judgment that were "designed to prove the alleged sexual behavior and predisposition of plaintiff." Plaintiff suggested that the defendants should have produced the aforementioned facts under seal pursuant to Rule 412. Plaintiff requested an in camera hearing to address the admissibility of these facts. On July 15, 1998, the court denied plaintiff's motion based upon her failure to comply with the procedural requirements of Rule 11. The court further determined that an in camera hearing under Rule 412(c)(2) was neither necessary nor appropriate at this time. The court directed plaintiff to respond to the defendants' motions for summary judgment.

On August 5, 1998, plaintiff filed a consolidated response to the motions for summary judgment. She also filed the instant motion at that time. She submitted an additional memorandum on the aforementioned facts to the court under seal. She did not serve this memorandum on the defendants.

In this motion, plaintiff contends that the aforementioned facts should be deemed inadmissible under Rule 412(b)(2). Plaintiff further requests a hearing under Rule 412(c) if deemed necessary by the court.

The defendants have countered with several arguments, most of which they raised previously in response to the plaintiff's motion for sanctions. The defendants initially argue that plaintiff's motion must be denied because she has not properly complied with the requirements of Rule 412. The defendants suggest the motion, by itself, does not meet the requirements of Rule 412 because the motion does not specifically describe the evidence to be admitted and state the purpose for which it is to be offered. The defendants further note that plaintiff has not fulfilled the service requirements of Rule 412(c)(1)(A) or D.Kan. Rule 7.4 because she did not provide them with a copy of the accompanying memorandum. The defendants next argue that Rule 412 does not apply to summary judgment motions. The defendants also suggest that plaintiff opened the door to the presentation of these facts by not objecting during discovery to any of the evidence that provides the basis for these facts. Finally, the defendants contend that plaintiff cannot meet the prerequisites for application of Rule 412(c) to the aforementioned facts.

The court shall not engage in an extended discussion of the procedural errors noted by the defendants. We are in agreement with the defendants that plaintiff's handling of this motion was improper. The proper procedure would have been to submit the memorandum to the court with a motion to file it under seal. The memorandum should have been served upon the defendants as required by both Rule 412(c) and D.Kan. Rule 7.4. Nevertheless, the court shall proceed to the merits of the motion because we believe that we already have an adequate response from the defendants due to the past proceedings in this case.

■ The first issue to be addressed is the defendants' argument that Rule 412 does not apply to summary judgment motions. A reading of the rule and its accompanying advisory notes suggests some merit to this argument. A party seeking to offer sexual behavior or sexual predisposition evidence must "file a written motion [with the court] at least 14 days before trial specifically describing the evidence and stating the purpose for which it is offered." Fed.R.Evid. 412(c)(1)(A). "Before admitting [any] evidence under [the] rule the court must conduct a hearing in camera and afford the victim and parties a right to attend and be heard." Fed.R.Civ.P. 412(c)(2). The rule does not mention summary judgment proceedings. The defendants further emphasize that interpreting Rule 412 to provide protection for litigants in sexual harassment cases is not necessary because they can obtain protection by seeking protective orders during discovery proceedings.

In considering the arguments of the parties, we are of the belief that the foremost consideration must be the purpose of the rule. Rule 412 was designed to protect the privacy interests of victims of sexual misconduct. An interpretation of the rule that would allow the parties to expose this evidence in a summary judgment motion without the safeguards of Rule 412 would circumvent the purpose of the rule. The court can consider only admissible evidence in deciding a motion for summary judgment. *Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1541 (10th Cir.1995); *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir.1995). Rule 412, unlike most of the other rules of evidence, requires some affirmative action by the court prior to the introduction of evidence that falls within its limits. Contrary to the suggestion of the defendants, discovery orders may not provide the protection necessary since discovery can obviously include matters that may ultimately be found to be inadmissible. Accordingly, we do believe that the requirements of Rule 412 must be applied to summary judgment proceedings.

With this finding, we turn to the merits of the instant motion. We shall not spend much time on these issues because the parties are largely in agreement on whether the aforementioned information should be considered by the court. The defendants have generally acknowledged that these facts were only included to counter any claim by the plaintiff that she was subjected to a hostile work environment based upon sexual jokes, remarks or horseplay. The defendants note that although plaintiff had indicated that she did not intend to pursue such a claim, she had not amended her complaint to delete this claim. Plaintiff now affirmatively states that she is not asserting such a claim. The pretrial order which was filed after the motions for summary judgment were filed eliminates any claim of a hostile work environment based upon sexual jokes, remarks or horseplay. Accordingly, as a general matter, the court does not intend to consider any of this material in deciding the pending motions for summary judgment. Both sides have generally admitted it is irrelevant with the elimination of the aforementioned claim. To the extent that any of this information remains relevant after the decision on the pending motions for summary judgment, the court shall expect the parties to follow the dictates of Rule 412 where applicable. *See Socks–Brunot v. Hirschvogel Inc.*, 184 F.R.D. 113, 116–21 (S.D.Ohio 1999).

**IT IS THEREFORE ORDERED** that plaintiff's motion for determination of admissibility (Doc. # 150) be hereby denied as moot.

**IT IS SO ORDERED.**